[721 NYS2d 72]

In the Matter of DAVID GRIFFITHS, an Attorney, Respondent. GRIEVANCE COMMITTEE FOR THE NINTH JUDICIAL DISTRICT, Petitioner.

Second Department, February 5, 2001

APPEARANCES OF COUNSEL

*Gary L. Casella,* White Plains (*Forrest Strauss* of counsel), for petitioner.

*Carl M. Bornstein,* New York City, for respondent.

**OPINION OF THE COURT**

Per Curiam.

The respondent was served with a petition containing six charges of professional misconduct. In his answer, he admitted in part and denied in part the allegations. At the hearing, the Grievance Committee's case consisted of 33 exhibits. The respondent testified on his own behalf, called two character witnesses, and introduced eight exhibits into evidence. At the conclusion of the hearing, the Special Referee sustained all of the charges except Charge Four. The Grievance Committee moves to confirm the Special Referee's report as to Charges One, Two, Three, Five, and Six, and to disaffirm it as to Charge Four. The respondent cross-moves to confirm the report as to Charge Four and to disaffirm it, or consider mitigating facts, as to the remaining charges.

Charge One alleged that the respondent engaged in an impermissible conflict of interest and/or engaged in conduct adversely reflecting on his fitness to practice law, in violation of Code of Professional Responsibility DR 5-105 (a), (b) and (c) (22 NYCRR 1200.24 [a], [b], [c]) and DR 1-102 (a) (8) (now [7]) (22 NYCRR 1200.3 [a] [7]), by acting with two people with whom he had an attorney-client and/or fiduciary relationship to lend money to third parties.

On or about November 11, 1980, the Kitson Roberts Trust (hereinafter the Trust) was created by the execution of a trust agreement that the respondent drafted at the request of his client Robert E. Roberts. The respondent was the sole trustee and administrator of the Trust and was vested with sole discretionary authority over, *inter alia,* the disbursement and/or investment of the corpus of the Trust. In or about July 1986, the respondent was also the attorney for Julius Fiorillo in Fiorillo's capacity as the executor of the estate of Fiorillo's deceased father (hereinafter the Estate), and the respondent handled legal matters arising from the Estate.

Prior to July 21, 1986, the respondent was approached by Philip McGovern and Edward O'Donnell about procuring a loan for the renovation of a parcel of real property in White Plains. The respondent spoke with Robert E. Roberts and Ju-

lius Fiorillo about the Trust and the Estate lending money to McGovern and O'Donnell.

On or about July 21, 1986, the Trust, the Estate, and the respondent, personally, loaned McGovern and O'Donnell a total of $130,000 in a transaction prepared solely by the respondent. The $130,000 was comprised of $100,000 from the Estate, $25,000 from the corpus of the Trust, and $5,000 from the respondent's own funds. The respondent knew or should have known that he could not represent all of the interests of the lending parties to the loan transaction simultaneously.

Charge Two alleged that the respondent engaged in an impermissible conflict of interest and/or engaged in conduct adversely reflecting on his fitness to practice law, in violation of Code of Professional Responsibility DR 5-105 (a), (b) and (c) (22 NYCRR 1200.24 [a], [b], [c]) and DR 1-102 (a) (8) (now [7]) (22 NYCRR 1200.3 [a] [7]), by arranging for another client to purchase the interest of the Estate in the McGovern-O'Donnell loan:

John Battista was a client of the respondent on or before June 15, 1987. Some time between November 1986 and June 15, 1987, Julius Fiorillo advised the respondent that he wished to obtain a third-party buyer to purchase the interest of the Estate in the McGovern-O'Donnell loan. The respondent informed Battista that an opportunity to purchase that interest was available. The respondent subsequently prepared the necessary paperwork, and on or about June 15, 1987, that interest in the loan was assigned to Battista in exchange for his payment of $75,000. The respondent knew or should have known that he could not represent the interests of Battista simultaneously with those of the other lenders.

Charge Three alleged that the respondent failed to preserve the identity of funds and/or property belonging to a client, and that he engaged in conduct adversely reflecting on his fitness to practice law, in violation of Code of Professional Responsibility DR 9-102 (a) (22 NYCRR 1200.46 [a]) and DR 1-102 (a) (8) (now [7]) (22 NYCRR 1200.3 [a] [7]), by failing to deposit a cash payment that he received as a fiduciary into an identifiable bank account maintained in this State:

In or about January of 1988, the respondent received $9,000 from Philip McGovern to apply to the outstanding balance due on the McGovern-O'Donnell loan. The respondent failed to deposit the payment into a bank account.

Charge Four alleged that the respondent commingled funds, in violation of Code of Professional Responsibility DR 9-102 (a)

(22 NYCRR 1200.46 [a]), by failing to timely remove earned fees from his attorney escrow account:

Between September 30, 1992, and August 21, 1995, the respondent maintained an account at Banker's Trust captioned as the "Griffiths and O'Connell Attorney Trust Account." During that period the respondent failed to remove earned fees from that account and one or more subaccounts in a timely manner in connection with certain clients.

Charge Five alleged that the respondent engaged in conduct adversely reflecting on his fitness to practice law, in violation of Code of Professional Responsibility DR 1-102 (a) (8) (now [7]) (22 NYCRR 1200.3 [a] [7]), by disbursing funds on behalf of a client in excess of the amount on deposit for that client in his attorney trust account:

Between August 27, 1993, and December 19, 1995, the respondent maintained an account at Chase Manhattan Bank captioned as the "Griffiths O'Connell Lawyers Escrow Account." Between August 11, 1995, and September 13, 1995, the respondent made deposits into and disbursements from that account in connection with a client matter. During that period, the amount of money disbursed exceeded the amount deposited for that client.

Charge Six alleged that the respondent engaged in conduct adversely reflecting on his fitness to practice law, in violation of Code of Professional Responsibility DR 1-102 (a) (8) (now [7]) (22 NYCRR 1200.3 [a] [7]), by disbursing earned fees directly to third-party creditors:

Between September 30, 1992, and August 21, 1995, the respondent disbursed earned fees directly from his Banker's Trust escrow account to third-party creditors of him and/or his law firm including, *inter alia,* the Internal Revenue Service, Robert E. Roberts, and/or the Kitson Roberts Trust.

Based on the respondent's admissions and the evidence adduced at the hearing, all of the charges are sustained.

In determining the appropriate measure of discipline to impose, the respondent asks the Court to consider his military record, his public service as a teacher and as an Assistant District Attorney, the character evidence presented at the hearing, that his misconduct occurred approximately 14 years ago, that he did not have any venal intent, that he fully reimbursed his clients for their losses, and that he is truly remorseful. The respondent also asks the Court to consider the changes in his law practice that he has implemented, including a computer-

ized accounting system and monthly and quarterly reviews of his accounts by him and an accountant, respectively. Moreover, the respondent reports that he currently derives only 10% to 15% of his income from the practice of law. The respondent contends that, in view of these mitigating circumstances, the most lenient sanction possible should be imposed.

The respondent's prior disciplinary history consists of a letter of caution dated October 28, 1994, for impermissibly communicating with a represented party, in violation of Code of Professional Responsibility DR 7-104 (a) (1) (22 NYCRR 1200.35 [a] [1]).

Under the totality of the circumstances, the respondent is suspended from the practice of law for a period of five years.

O'BRIEN, J. P., RITTER, SANTUCCI, ALTMAN and S. MILLER, JJ., concur.

Ordered that the petitioner's motion to confirm, in part, and disaffirm, in part, the report of the Special Referee is granted; and it is further,

Ordered that the respondent's cross motion to confirm, in part, and disaffirm, in part, the report of the Special Referee is denied; and it is further,

Ordered that the respondent, David Griffiths, is suspended from the practice of law for a period of five years, commencing March 5, 2001, and continuing until the further order of this Court, with leave to the respondent to apply for reinstatement no sooner than six months prior to the expiration of the five-year period upon furnishing satisfactory proof that (a) during that period he refrained from practicing or attempting to practice law, (b) he has fully complied with this order and with the terms and provisions of the written rules governing the conduct of disbarred, suspended, and resigned attorneys (see, 22 NYCRR 691.10), and (c) he has otherwise properly conducted himself; and it is further,

Ordered that pursuant to Judiciary Law § 90, during the period of suspension and until the further order of this Court, the respondent, David Griffiths, shall desist and refrain from (1) practicing law in any form, either as principal or agent, clerk, or employee of another, (2) appearing as an attorney or counselor-at-law before any court, Judge, Justice, board, commission, or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding himself out in any way as an attorney and counselor-at-law.